Good morning ladies and gentlemen. The first case this morning is Fontaine v. Metropolitan Life Insurance. Okay, Mr. Linker. Good morning, your honors. May it please the court, Ian Linker on behalf of Metropolitan Life Insurance Company. This case is about the standard of review under ERISA, a federal statute the Supreme Court described in Concrite as representing, quote, a careful balancing between ensuring fair and the creation of such plans. Deferential abuse of discretion review, the Supreme Court noted, is critical to this framework. Critical? Critical, your honors. Does it say anything about that in the statute? In the statute, no. The default rule is what? The default rule under the Supreme Court's decision in Firestone is de novo review, but... So how is deferential review critical? According to the Supreme Court in Concrite, the court was very clear about that, your honor. The court stated that, quote, deference promotes efficiency by encouraging resolution of benefits disputes through internal administrative proceedings rather than costly litigation. It also promotes predictability. These are Congress's goals, uniformity, predictability, efficiency. The court said it promotes predictability as an employer can rely on the expertise of the plan administrator rather than worry about unexpected and inaccurate plan interpretations that might result from de novo judicial review. Moreover, Firestone deference serves the interest of uniformity, helping to avoid a patchwork of different interpretations of a plan. Mr. Linkert, before you dive further into this, could I ask you about a few preliminary issues? Sure. What is the status of the attorney fee award here? The district court stayed that decision pending the outcome of the appeal. At this point, the district judge has said he intends to award fees but has not yet set an amount? Correct. Okay. Should we expect another appeal if we affirm? On the attorney's fees issue? That hasn't been discussed, your honor. The answer would probably be yes. Well, maybe. We'll see. They can always settle. Second, do you agree that if de novo review applies that we need to affirm here? I haven't seen any briefing by you all. MetLife has not appealed that aspect of the court's decision, your honor. Okay. And do you also agree now that the state commissioner had authority under state law to issue the regulation 2001.3? Yes, your honor. Okay. Thank you. You're welcome. But this case is also about, your honor, Fontaine's attempt to interpret that regulation that you just spoke of, Judge Hamilton, a regulation promulgated by the Illinois insurance director to strip an ERISA plan administrator, not an insurer, of its right to grant discretionary authority to the plan's claim administrator. Well, that's not quite right, is it? I mean, if the plan wants to self-insure, then this regulation would not apply, would it? A self-funded plan would not be covered by this regulation, your honor. Right. So it's only if you actually want to use insurance that the regulation applies, right? The regulation is clear, though, your honor, that it is limited to insurers reserving to themselves discretionary authority. Is that the way it's phrased? Yes, your honor. That's not the way I read it. It simply applies to the content of the document, right? It doesn't say who reserves discretion. Well, it actually does, your honor. The regulation talks about a health carrier reserving for itself. Do you see the word itself? Well, no, but it's talking about a health carrier that... No policy may contain a provision purporting to reserve discretion to the health carrier. Now, it doesn't matter who reserves the discretion, right? No, but it says that it must be offered or issued by the health carrier. So the health carrier that's offering or issuing the document that's covered by this regulation, which must be an insurance policy, contract, certificate endorsement, rider, or application or agreement, must be offered or issued by the health carrier containing a provision purporting to reserve discretion to the health carrier. So does your discretionary authority reservation govern the terms of the insurance in this case? The delegation of discretion is contained in a separate document. Does it, I know, does it govern the terms of the insurance? I wouldn't say that it governs the terms of the insurance. And how does it have any effect? It has an effect on the standard of review that courts will apply after a claim determination is made. It doesn't have... Is that separate from the It has the same effect that it would have in a self-insured plan, to your Honor's earlier point. No, it doesn't. How do you reconcile your position on this with the Supreme Court's decision in Unum v. Ward, which explained that this kind of gamesmanship about just avoiding state regulation by putting it in a different document that still governs the terms of the insurance won't work. In Unum v. Ward, there wasn't an issue with respect to a separate document. The notice provisions at issue in Ward were contained in the policy themselves, unlike the grant of discretionary authority at issue here. And that's an important distinction because on its face... Was that distinction evident in the opinion? No, no. Well, it was evident at page 364 that the notice provisions were in the policy. We're talking about apples and oranges. Under Unum's interpretation of 1104 A1D, states would be powerless to alter the terms of the insurance relationship in ERISA plans. Insurers could displace any state regulation simply by inserting a contrary term in plan documents. That interpretation would virtually read the saving clause out of ERISA. That's exactly what you're arguing here, isn't it? Well, it's not really what we're arguing here, your Honor, because again, it wasn't MetLife that reserved to itself discretionary authority. It was Mayor Brown, the plan  rejected using those pages. It could have put out its own plan document and issued that document to its employees, but instead it offered the plan document that we have here to its employees. It provided that document to its employees. MetLife did not issue that document to Mayor Brown's employees. But you agree that it governs the terms of the insurance that you all provide to the employees and partners of Mayor Brown. I would not agree with that, your Honor. What legal effect does it have? Again, it applies to the standard of review that a court will apply. In resolving a dispute over the terms of the insurance, correct? No, your Honor. We're talking about plan benefits. The insurance policy here is a funding mechanism for benefits under the plan. We are talking about discretionary authority. I've got to say, this is ingenious. It's a great way to avoid state insurance law. I mean, it has never been a part of insurance law. Since 2005. I understand, but the only application of a discretionary clause comes in ERISA, an area that the Supreme Court has basically staked out exclusive terrain over. The court has made very clear the importance of deferential review. It has been very clear about that. I read a few excerpts from Concrite before where the court couldn't have been clear that deferential review facilitates congressional intent. They like it, but you agree that Concrite says nothing about preemption. No, that's true, your Honor, but there is an aspect of preemption, and we're not talking about statutory under ERISA itself, but where state law would interfere with... Speaking of that, can you direct me to some ERISA cases from the Supreme Court where they have applied implied preemption? We have one of the most elaborate statutory frameworks for express preemption in ERISA that I've ever seen. I have not seen one, your Honor. Neither have I. But I'd like to get back to the circumvention issue that you raised from Unum v. Ward, and it's an important... it's important in light of what I've stated about the Supreme Court's holdings regarding deferential review. MetLife, as I've also stated, was not attempting to circumvent anything. Because deferential review is such an important part of ERISA and the standard that courts will apply to plan benefit determinations, if anything, it's Fontaine that is attempting to circumvent those holdings from the Supreme Court. Deferential review is very clear that when a plan grants discretion, as this one does, the standard of review is, in fact, the deferential abuse of discretion standard. I would like to talk a little bit more about preemption, your Honors. So if the court holds that the district court in Fontaine correctly interpreted section 2001.3, then it's MetLife's position that ERISA must preempt the regulation because it would not be specifically directed at the insurance industry. I know you have Hamilton, but it's true. It's an extraordinary position. With respect, MetLife does not agree with that, your Honor. MetLife did not reserve for itself discretion. Mayor Brown granted discretionary authority to MetLife. That is an important distinction, your Honor. The regulation simply does not cover that scenario at all. It is not MetLife's position that ERISA's saving clause only exempts from it. Nor is it MetLife's position that the regulation on its face targets plan administrators or sponsors. And how do you say that Mayor Brown granted discretion to MetLife? In the plan document, in the pages following the certificate, after the certificate, there is a section in which the plan administrator, which is Mayor Brown, granted discretionary authority to the insurers under the insurance policy, correct? I wouldn't say it's binding on them, your Honor. It's merely part of, ERISA was founded based on trust law and trust principles, and the Supreme Court said applying those trust principles, we will apply a deferential standard of review. No, well, it said we will presume de novo review. But when the plan grants discretionary authority, your Honor, as this one does, the standard of review is deferential. It's the abuse of discretion standard of review. That's what this plan document grants. ERISA was founded on principles of trust law, and it's... Oh, you're absolutely right, but for the regulation. But I have trouble seeing how you avoid application of the regulation by simply putting this on a separate piece of paper. If the delegation of discretion were in the insurance policy or certificate, we would be having, we could be having a different discussion. So why does the regulation apply to rider or agreement? Because those are other documents that the state insurance director has jurisdiction over. The enabling statutes here are very clear, that the insurance director in authority to withhold or withdraw approval of insurance documents when they contain certain offensive provisions. He does not have power over non-insurance documents. So if you've got a side deal with the third-party payer, in this case Mayor Brown, to refuse to comply with state law, the state has the terms of the payment of benefits or the non-payment of benefits to the participants in the plan. There was no side deal here, your honor. Mayor Brown... Right, because this is central to the terms of your whole deal, right? It's a triangular deal among employees, partners, Mayor Brown and MedLife, right? I'm not following you, your honor. What's central to the whole deal? Your reservation of discretionary authority. Well, as I said earlier, your honor, MedLife did not reserve discretionary authority to itself. You accepted it. Mayor Brown granted it. You accepted it. MedLife is a claims fiduciary and must administer the plans in accordance with the terms of the plan. When Mayor Brown opted to delegate discretionary authority to MedLife, MedLife didn't do anything different. They didn't accept... You insist on enforcing it when there's a dispute in district court, right? No, your honor. Is that you did not insist on applying discretionary review and arbitrary and capricious review in district court? Of course you did. In the courts we argue that discretionary review applies because the grant of discretion is in the plan, but during the claims process it doesn't affect MedLife's obligation to administer the plan. There was no side deal here. Mayor Brown chose to provide that document as its plan document, which it has the obligation to do under ERISA. It could have used its own document, but it did not use the document that we have in front of us here today. But it's important because, to talk about the enabling statutes, the enabling statutes don't give the insurance director power over... Is that part of, I assume it was, the negotiations in selling this plan to Mayor Brown? The grant of discretion was, I wouldn't say that it was part of the negotiations. Quite honestly, your honor, I'm not really sure if it was part of the negotiations. Is it taken into account in pricing? I don't know the answer to that. One of the amicus briefs, I've forgotten which one, tells us that the difference between discretionary and de novo review produces something like a 3% difference in premiums. Do you disagree with that or agree with it? I cannot disagree or, you know, agree with that statement, but I'd like to talk about a little bit more Kentucky v. Miller. Fontaine relies on Kentucky v. Miller quite a bit. I think it's worth discussing for a minute. Fontaine argues that the regulation applies to plan administrators and sponsors, and Judge Hamilton, I think we would agree that we've discussed that a lot at this point. As much as might be useful. If Fontaine is correct about that, then the regulation directly impacts plan administrators and sponsors because it prohibits them from granting discretionary authority in their benefit plans, unlike the indirect or collateral impact of the state laws on providers in Kentucky v. Miller. In Miller, the Supreme Court considered whether ERISA preempted Kentucky's Any Willing Provider laws, and those laws basically said that HMOs could not discriminate against the provider who agrees to all the terms and conditions of the plan. The laws, the Any Willing Provider laws, by their terms impose no prohibitions or requirements on the providers and had an indirect effect on the providers, but were directed at insurers. The court stated in Kentucky v. Miller, quote, regulations directed toward certain entities will almost always disable other entities from doing with the regulated entities what the regulations forbid. This is not the situation we have here. The Any Willing Provider laws in Miller had an indirect effect on the providers, so the court found the laws were specifically directed at the insurance industry. If Fontaine is correct, Section 2001.3 would have a direct effect on both plan administrators and sponsors and insurers. That cannot be specifically directed at the insurance industry. You're getting into your remainder of my time. Mr. Dubofsky. May it please the court, counsel, my name is Mark Dubofsky. I represent the plaintiff Mary Fontaine. When MetLife issued this policy, it explicitly stated that it was subject to the laws of the state of Illinois. Twice in the policy, once in the policy itself, once in the certificate, the policy indicated that it would conform the policy with the provisions of state law. That is entirely consistent with Unum v. Ward, Rush Prudential, and with every other Supreme Court case that has considered a comparable issue, going back to the original case regarding the savings clause of ERISA, MetLife v. Massachusetts. Once MetLife agreed to bind itself to state law, which it had to as a condition of doing business in this state, it was subject to section 2001.3 of the Illinois regulations. MetLife is trying mightily to evade that. MetLife has argued that if this court upholds 2001.3, it would amount to heresy, or it would create a parade of horribles that would allow states to interfere with basic federal civil procedure. None of that is true. Rush Prudential v. Moran drew the line. Rush Prudential indicated that so long as the state law does not interfere with either ERISA remedies or the ERISA statutory scheme, that law will be saved from preemption. What's the timing between the enactment of that law and the as of July 1st, 2005? This policy did not go into effect as far as the disability coverage until 2010. Well, I was talking more about when it was negotiated, but it was around that same time. There's absolutely no indication in the record when it was negotiated. Oddly, the court looks at the plaintiff's appendix. The first page indicates at the bottom, group dental insurance policy, but evidently what occurred here is that the disability coverage certificate was made a part of this policy. The group policy is just basically a wraparound policy with the certificate providing the actual coverage. So when MetLife issued the disability coverage, they did it knowing full well that Illinois had prohibited discretionary clauses. There were two choices here that negate the arguments that MetLife has made in this case. If Mayor Brown truly wanted deferential review, they didn't have to insure. They chose to purchase insurance, which implies that MetLife knew that whatever insurance policy they would buy would protect their partners, their lawyers, and the other individuals covered by this policy by the provisions that are set forth in the Illinois Insurance Code. Second, if MetLife did not want to be bound by this, MetLife could have chosen not to write in Illinois. The policy explicitly states that it was issued in the state of Illinois. So MetLife's theory about disuniformity is not a valid argument whatsoever, because any Mayor Brown employee covered by this policy, whether they live in Illinois or Indiana or wherever, the policy is subject to the laws of the state of Illinois. So they are going to receive uniform protection. So if MetLife loses this case and Mayor Brown says we really want deferential review, they can just work through have the policy issued in a different state and the Illinois employees are not protected by the Illinois law? I believe that policy does exist, that that prospect does exist, but I would consider it to be unlikely especially since Mayor Brown is based in Chicago and likely to issue the policy in the state of Illinois. Unfortunately, that's a problem with ERISA and there's no question that there are states that the court has seen the NAIC amicus brief. Approximately half the states have approved similar bans, half the states have not, but one would ask why Mayor Brown would want to provide coverage for its partners and attorneys that would provide less protection than they would have if they were in another state. Well, I mean, it's a market, right? It's a market and everybody wants to save money, but the reality is I think people want more protection too. And this court has had a history of issuing opinions, going back to Herzberger versus Standard, that talks about that the discretionary clause gives less protection to the insurance. So that's clear, I mean, the history of UNUM and it's taking advantage of discretionary review as a business strategy is also clear. Absolutely. So based on the cases that are from the Supreme Court that clearly allow for this type of arrangement to take place and clearly allow for a clause such as section 2001.3 to be effective and to trump any other provision. In effect, it's read into the policy under or read into the plan under the Supreme Court cases and as your both Rush Prudential versus Moran, in this court in Larson versus United Healthcare, citing Rush Prudential for exactly the proposition that if we're permissible to write language such as what MetLife is relying on into a document other than the insurance policy, it would essentially negate the entire savings clause. And that's something that Congress would not have envisioned or would not want to see happen once the savings clause was written into the ERISA statute. Counselor, I'd like to ask you about one issue about the scope of the regulation. That is, it applies only to discretion to interpret the terms of the contract or to provide standards of interpretation or review that are inconsistent with the law of the state. MetLife is arguing that this is not a question of evaluating specific evidence in this one case. And I understand it may be a difficult line to draw, but can you envision cases in which there really is no dispute about interpretation? One that comes to my mind would be one, for example, where everybody might agree that if the plaintiff's subjective complaints of pain, etc., are true, then she's disabled. But a doctor says she's malingering. And all you've got is a straight credibility question. Would 2001.3 apply in such a case? I think it still would. Why? Because in the Supreme Court's Firestone decision, the Supreme Court explicitly stated that the validity of a claim is likely to turn on the interpretation of the terms. If the policy explicitly says something, then it's not a matter of applying discretion or not. It's just going to be. That's going to be the determination under either the de novo standard or the arbitrary and capricious standard. In the problem where the only issue is credibility, though, how is that an issue of contract interpretation? I don't see that that can ever be the single issue because there still would have to be an interpretation of the terms of the policy as far as what the definition of disability is in the contract. If the contract, let's say, said the only evidence that will be considered by the administrator is objective evidence such as x-rays, MRIs, blood tests, then if it turns on an issue of credibility, the policy is quite clear on that point. But otherwise, the definition of disability, unable to perform your occupation, is going to necessarily entail consideration of a variety of factors in interpreting how to apply that definition to the facts presented. I think what you're, let me put words in your mouth, but I think what you're saying is that there is no workable line separating contract interpretation from benefit determination. Exactly. Even though I've tried to come up with at least an extreme example in which it might be simple enough to say this is just about credibility. Exactly. Unless the court has any further questions, we Ms. Springberg-Perry. May it please the court, excuse me, Robin Springberg-Perry for the Secretary of Labor, supporting Appellee Fontaine as amicus. The Illinois law in this case is exactly the kind of state law that was purposely saved from a risk of preemption by the Savings Clause. The laws within the area of historic state sovereignty of insurance regulation, which Congress explicitly reserved to the states in McCarran-Ferguson, and later deliberately chose to exempt such state laws from a risk of preemption. Supreme Court has said the Savings Clause reclaims a substantial amount of ground from preemption, and laws regulating the terms of insurance contracts are saved at laws regulating insurance. Like the cases, the mandated mental health benefits in Metlife v. Mass, the Notice of Prejudice Law in Unum, and the Independent Review in Rush Prudential, this Illinois law changes the terms of the insurance contract to serve a state purpose. The law meets both parts of the Supreme Court's two-part test for laws to be saved. It's specifically directed towards entities engaged in insurance, and it substantially affects risk pooling arrangements. The law meets the first prong by imposing obligations on insurers with respect to their insurance practices. The fact that it also impacts other entities is irrelevant if it's grounded in a policy concern specific to the insurance industry, then it's directed towards entities engaged in insurance. And like the Supreme Court said in Kentucky Association, the law there, the Any Willing Provider Law, was specifically directed towards insurers even though it equally prevented providers from entering into contracts with insurers. And the court said the fact that law has significant effects on non-insurers does not prevent it from being safe. In this case, the law states the purpose is to protect insurance consumers by disallowing provisions that encourage deception and misrepresentation. Specifically, it says exceptions and conditions that unreasonably or deceptively affect the risk purported to be assumed in the general coverage of the policy. And the fact that the discretionary clauses in the plan document, not the insurance policy, makes no difference under UNAM. In UNAM, the insurer argued that the plan document did not contain the notice prejudice law and therefore applying the state law would conflict with ERISA 404 A1D that says you have to act by the terms of the plan document. And the Supreme Court rejected that. They said the absence of the term in the plan document is not a conflict because then insurers would be able to displace any state regulation by having a contrary term in a plan document. In that case, it was the absence of the term as it is here. And the Supreme Court rejected that argument. This law meets the second prong, substantially affecting risk pooling, because it requires insurance policies to omit certain terms and provisions and imposes conditions on the right to engage in the business of insurance. And as the court said in Kentucky Association, where the AWP law there altered the scope of permissible bargains between insurers and insureds because insureds could no longer seek insurance from a closed network of providers in exchange for a lower premium. And in Kentucky Association, the same was true of the laws in Rush, MetLife, DMASC, and UNAM. And in UNAM, the notice prejudice rule changed the bargain because it dictated to the insurance company the conditions under which it had to pay for the risk it assumed. And by invalidating that term in the plan, it similarly alters the scope of permissible bargains between insurers and insureds. The law directly controls the terms of insurance contracts by prohibiting insurers and insureds from entering into contracts that include discretionary clauses. And it imposes the condition that those who wish to provide insurance in Illinois must be subject to de novo review. The Sixth and Ninth Circuits looked at near identical laws and found they met both the first and second prongs and were saved. On the issue of this law's consistency with ERISA, there is no conflict because this law does not create any new remedies. There are no tort or punitive damage claims, as in laws that have been disallowed by the Supreme Court. The law is enforced in a normal way in a suit for benefits under 502. And Rush Prudential said, once a mandated benefit is incorporated into an insurance policy purchased by the plan and therefore incorporated into the plan itself, the required term, in this case the required deletion of a term, becomes part of the plan and then claims under the plan are enforced in the usual way. And as the Ninth Circuit said in Morrison, it's the same decision-maker, the federal courts, it's the same familiar processes. It has not changed the remedy in any way. Counsel, could you address footnote 17 in the Rush Prudential against Moran decision, which seems to hedge a little bit. What do you think that means? Your Honor, footnote 17 specifically refers to binding arbitration, and that's what I think that means. The court said it didn't mean to imply states were free to create other forms of binding arbitration to provide de novo review. And that's because that would be creating a different substantive remedy, not the kind enforced in courts, and it would change the statutory scheme. I think that's why the court was so careful to say that the independent review was not, in fact, like arbitration. Came pretty close though, didn't it? It came close, but the court... They were assuming the independent medical review would be dispositive, right, if it were favorable to the participant? I think they were, yes, but the court went through analysis of why, although it seems superficially to be like binding arbitration, it was not. It was different. The Supreme Court has said in Firestone and Rush Prudential that de novo is the default standard and deferential review is the exception. This court has also said that after Conkright in the Comrie case, Rush Prudential has said that plans are not entitled to deferential review. ERISA does not require it directly, excuse me, or indirectly. Therefore, this law does not conflict with ERISA. If there are no further questions, Your Honor, for these reasons we request you affirm the Just one brief question. We've got the Sixth and Ninth Circuits that have already weighed in on this. The Department of Labor is obviously paying attention to this. Are there other cases pending around the country that are presenting similar challenges to similar state laws? Not that I'm familiar with, Your Honor. The Tenth Circuit addressed it but did not address it by saying that that state law was not this kind, that was substantive. We're not necessarily seeing a campaign. I have not. You're not seeing it. I'm not. All right, thank you. Thank you. Mr. Blinker, how much time? You have four minutes, Mr. Blinker. Thank you. Just a couple of points that I'd like to raise in rebuttal, Your Honors. The first is that interpretive discretion is different from benefits eligibility discretion. This issue, in this case, is the interpretation of a plan document rather than the application of the plan's criteria for an award of benefits to particular facts. And the quotation from Firestone, even that quotation, the quotation that Mr. Dubofsky had read, distinguishes between the two when it uses eligibility for benefits or to construe the terms of the plan. It uses a disjunctive referring to them separately. They're not the same thing. The other point that I'd like to raise quickly is in Rush Prudential. The Supreme Court specifically left open the possibility that a broad ban on discretion outside the HMO context could interfere with Congress's goals for uniformity. And, Judge Hamilton, you are right to point out, point the Department of Labor to footnote 17. And while the text of that footnote does mention arbitration, the create a broadside to deferential review with the Rush Prudential case. They were limited to the law at issue there, the HMO law, that created this additional layer of review on medical necessity determination. I gotta say, the law in Rush Prudential seems far more intrusive than this one does to me. Well, I mean, the way Fontaine is interpreting this law, Your Honor, would essentially ban the plans. Right. That seems pretty broad to me. In Rush Prudential, it was limited to that the state law, the HMO law, that created an additional layer of review when two doctors couldn't agree on whether something constituted a medical necessity. That is just one sliver. And that became then a decisive determination, right? Well, yes, that was true. The court was assuming that that would control. Right, but the court in footnote 17 specifically said it wasn't looking to, let me just read to you the second part of that footnote that you pointed out, Your Honor, in footnote 17. It says, rather, we hold that the feature of section 4-10 that provides a different standard of review with respect to mixed eligibility decisions from what would be available in court, i.e. the deferential use of discretion standard of review, is not enough to create a conflict that undermines congressional policy in favor of uniformity of remedies. The Supreme Court in Concrite specifically said what the importance of deferential review was to facilitating congressional policy. Do you think Concrite limited Rush then? I wouldn't say that it expressly limited Rush. I know it didn't expressly do anything about Rush, right? Correct. Your argument is that there was some kind of silent transformation here. It clarified, Your Honor, what the importance of deferential review was and it was left open in that footnote 17 by the Supreme Court in Rush Prudential and Concrite came in and filled essentially that gap with that information, with that statement from Concrite. I'd also like to quickly talk about the Ninth Circuit decision in Morrison. Now Morrison, similar to the Sixth Circuit's decision in Ross, the grants of discretion or the those, they were both in the policies. Again, as I stated to you earlier in my opening remarks, that the grant of discretion here is not in the policy, it's in the separate plan document or pages of the plan document. The Ninth Circuit implied that if deferential review was a cornerstone of ERISA, it may have decided the case a little differently. The court stated Firestone's explicit acceptance of the de novo standard coupled with Glenn's acknowledgement that the conflict of interest could prove of great importance in some cases indicates that highly deferential review is not a cornerstone of ERISA. In Concrite, the court said it is a cornerstone of ERISA. While not using that exact word, it talked about the importance of deferential review. Your Honors, MetLife respectfully requests this court reverse the District Court's entry of judgment with respect to the group benefits, apply the abuse of discretion standard or review, affirm MetLife's benefit determination and enter judgment in MetLife's favor. Thank you. Thank you, counsel. Thanks to all counsel. The case will be taken under advisement.